# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH MURPHY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 09-1590** |
| | : | |
| **SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,** et al. | : : : | |

**Diamond, J.**                                                                 **February 12, 2010**

## Memorandum

In December 2007, Southeastern Pennsylvania Transportation Authority fired Kenneth Murphy from his position as a transit police officer because it found that while on a "Final Warning" for an earlier infraction, Murphy had violated SEPTA Directives by: 1) repeatedly making obscene, threatening, and racially abusive remarks to his girlfriend and her mother; and 2) failing to inform his supervisors that Philadelphia Police had confronted him during a fight he had with his girlfriend. Murphy does not dispute these facts. Rather, in his Complaint, Murphy alleges that SEPTA fired him in December 2007 to retaliate against him for filing an EEOC complaint in February 2005. In response to SEPTA's Summary Judgment Motion, however, Murphy raises new allegations of retaliation. Because Murphy neither exhausted his administrative remedies with respect to these new claims nor sought to amend his Complaint to include them, they are not properly before me. Even if I consider the belated allegations on the merits, however, it is apparent that like the original allegations, they cannot survive summary judgment.

## I. JURISDICTION

Plaintiff Kenneth Murphy brings this action against Defendants SEPTA and employees Richard Evans, David Scott, and Vandyke Rowell pursuant to Title VII, the Civil Rights Act, and the Pennsylvania Human Relations Act. 42 U.S.C. §§ 2000(e) *et seq,* 1981, 1983; 42 Pa. Stat. §§ 951-963. The Court has jurisdiction to hear Plaintiff's federal claims under 28 U.S.C. §1331 and supplemental jurisdiction to hear Plaintiff's state law claims under 28 U.S.C. §1367.

## II. LEGAL STANDARDS

The requirements for granting summary judgment are well known:

> Upon motion of any party, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265 (3d Cir. 2005). If, after viewing all reasonable inferences in favor of the non-moving party, the court determines that

there is no genuine issue of material fact, summary judgment is appropriate. See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The opposing party must support each essential element with concrete evidence in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (*citing* Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

### III. HISTORY

In describing this case, I have construed the undisputed facts in the light most favorable to Plaintiff and resolved all material factual disputes in Plaintiff's favor. I have separately noted those instances where Plaintiff disputes Defendants' factual contentions, but offers no supporting evidence . I have treated these factual contentions made by Defendants as undisputed. See Blaylock v. City of Phila., 504 F.3d 405, 413 (3d Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)) (a factual allegation without evidentiary support cannot create a genuine factual dispute).

#### A. Plaintiff's Employment with SEPTA

On October 8, 1981, SEPTA hired Plaintiff, an African American, to the position of transit police officer. (*Doc. No. 1, at 3.*) In December 2003, SEPTA disciplined Plaintiff for leaving his post without authorization and failing to respond to a call for backup. Plaintiff received a fifteen day suspension and a Final Warning. In September 2004, SEPTA discharged

Plaintiff after he again left his post without authorization. (*Doc. No. 20, Ex. 6.*) The Fraternal Order of Transit Police filed grievances on Plaintiff's behalf, challenging the 2003 suspension and the 2004 discharge. (*Id., Ex. 5.*)

While his grievances were pending, on December 6, 2004, Plaintiff filed a successful workers' compensation claim alleging that from March 18, 2004 through June 18, 2004 he suffered severe headaches as a result of a hostile work environment. (*Doc. No. 22, Pl.'s Statement of Facts, at 3*). On February 23, 2005, Plaintiff also filed a complaint against SEPTA with the Equal Opportunity Employment Commission, alleging race discrimination and retaliatory termination. (*Pl.'s Trial Exhibits, at Ex.* 21). After receiving a right to sue letter, Plaintiff abandoned the claims. (*Doc. No. 22, Pl's Response to Def Statement of Facts, at 9.*)

On March 9, 2006, an arbitrator issued a final determination regarding Plaintiff's grievances, upholding Plaintiff's 2003 suspension and Final Warning, but reducing Plaintiff's 2004 discharge to a suspension and another Final Warning. (*Doc. No. 20, Ex. 5.*) Accordingly, the arbitrator ordered Plaintiff's immediate reinstatement to his former position as a patrol officer with no loss of seniority. (*Id.*)

Sometime after learning of the award, Plaintiff attempted to contact SEPTA regarding his employment. On March 28, 2006, Defendant Vandyke Rowell, a SEPTA Police Captain, informed Plaintiff that SEPTA's Medical Department had cleared him to return to full duty and that SEPTA would officially reinstate him effective March 29, 2006. (*Doc. No. 20, Ex. 9.*) Plaintiff received no wages during the twenty days it took SEPTA to process his reinstatement. He filed no grievance respecting this twenty-day period, however, and – until he responded to the instant Summary Judgment Motion – never suggested it was in any way unreasonable.

4

On March 23, 2006, SEPTA ratified a labor agreement making all active patrol officers eligible to receive a $1,000 bonus. (*Doc. No. 26, Ex. 31*.) The bonus checks were processed on March 25th and distributed on March 31st. (*Doc. No. 22*). SEPTA informed Plaintiff that he was ineligible to receive the bonus because he was not on the active payroll when SEPTA ratified the agreement. (*Doc. No. 26, Ex. 31*.) The FOTP filed a grievance on Plaintiff's behalf, and on August 23, 2006, SEPTA agreed to pay Plaintiff the $1,000 bonus. (*Doc. No. 26, Ex. 31, 34*.)

On January 4, 2007, SEPTA offered some officers overtime hours to work at the January 6th New Year's Day Parade in Philadelphia. (*Pl.'s Trial Exhibits, Ex. 87*). Because Plaintiff's superiors did not inform him of the overtime detail, he missed an opportunity to earn overtime wages. (*Doc. No. 22, Pl.'s Statement of Facts, at 7*.) The FOTP filed another grievance on Plaintiff's behalf. (*Pl.'s Trial Exhibits, Ex. 87*). After conducting an internal grievance hearing, SEPTA Lieutenant Cynthia Santiago found that given Plaintiff's seniority, he should have been contacted regarding the overtime opportunity, and awarded him 13.5 hours of lost overtime. (*Id.*)

### B. Incidents Related to Plaintiff's 2007 Discharge

In February 2007, Plaintiff began dating Annett Price. (*Doc. No. 22, Pl.'s Statement of Facts, at 5.*) On August 20, 2007, Philadelphia Police were summoned to Ms. Price's residence during a fight between her and Plaintiff. After speaking with Plaintiff, Police asked him to leave the residence. Plaintiff complied with the request and no criminal complaint was filed. (*Doc. No. 22, Pl.'s Statement of Facts, at 6.*) Plaintiff never informed his SEPTA supervisor of this incident. (*Id.*)

In September 2007, Plaintiff began leaving a series of almost forty messages on Ms. Price's home and work voicemails and her mother's voicemail. Plaintiff admits that he left the messages – some of which were heard by Ms. Price's co-workers – in which he repeatedly refers to Ms. Price as a "f**king stinking a**, black bi**h," "ho," "motherf**king monkey a**," and "bum a** bi**h." (*Doc. No. 20, Ex. 1 at 62-88.*) Plaintiff told Ms. Price that, "I'm going to be your worst nightmare," "you cruising for a bruising," "s**t going to happen to you," "if you think you are going to ignore me you always better watch your f**king stinking a**, black bi**h," and "you're the type of bi**h that needs to be put the f**k in the ground." (*Id.*)

On October 2, 2007, Ms. Price filed a complaint against Plaintiff with SEPTA's Internal Affairs unit. She provided IA with a recording of Plaintiff's voicemail messages. (*Doc. No. 19, at* 8.) Ms. Price informed IA of Plaintiff's August confrontation with Philadelphia Police, and stated that Plaintiff was "very abusive mentaly[sic] and physically to me, call my house and my mother's house and my job harassing me, I am afraid of my well being at this point." (*Doc No. 20, Ex. 18.*) IA assigned Sergeant Jerome Larke to investigate the matter. (*Def. Trial Exhibits, Ex. 25.*)

On November 5, 2007, Sgt. Larke interviewed Plaintiff, who admitted leaving the messages for Ms. Price. (*Doc. No. 20, Ex. 20*). Plaintiff denied, however, that the messages were threatening or harassing. (*Doc. No. 20, Ex. 1 at 62-88.*)

Sgt. Larke also interviewed Annett Price and her mother, Regina Frank-Price. Ms. Frank-Price said that after November 5th (the date of his interview with Sgt. Larke), Plaintiff had again made threats; she provided Sgt. Larke with five new voicemail messages.

When he completed his investigation, Sgt. Larke prepared a report, which was submitted to Defendant Evans, Chief of SEPTA Police. Chief Evans believed that Plaintiff may have

6

violated SEPTA Transit Police Directives, which govern the behavior of all patrol officers and the discipline that may be imposed on them. (*Doc. No. 20, Ex. 2*.) On November 29, 2007, Evans forwarded the report to Plaintiff's supervisor, Sergeant Nicolas Corrado, to determine if Plaintiff had committed an infraction requiring the imposition of discipline. (*Doc. No. 19; Doc. No. 20, Ex. 28*.) Having reviewed the Larke report, on December 6, 2007, Sgt. Corrado met with Plaintiff and FOTP President Neal to conduct a predisciplinary interview. Sgt. Corrado believed that in addition to violating SEPTA Directives, Plaintiff had committed the crimes of making terroristic threats and intimidating witnesses. (*Doc. No. 22, Ex. C at 18-19.*) Accordingly, before beginning the formal interview, Sgt. Corrado

> talked to [Plaintiff] along with his president, Richard Neal, and I talked to him like any of my officers, one on one, like a dutch uncle. I showed him the violations of the law that he committed and violations of law that I saw in the Internal Affairs report, and I even advised him to resign and freeze his pension as a friend.

(Id. at 17.)Sgt. Corrado then conducted the official interview, asking Plaintiff if he had read Sgt. Larke's report and if there was anything Plaintiff wanted to add. (*Doc. No. 20, Ex. 29.*) Plaintiff responded that he was seeking counseling and that "this kind of incident will never happen again." (*Id.*)

Sgt. Corrado met with Capt. Rowell and Joseph Horbury of SEPTA's Labor Relations Department. (*Doc. No. 22, Ex. C at 13.*) They informed the Sergeant that Plaintiff was under a Final Warning as a result of the March 2006 arbitration award, and that under SEPTA's Directives the Final Warning would not expire until March 2008. (*Doc. No. 19, at* 15.)

No one recommended to Sgt. Corrado the discipline he should impose on Plaintiff; the decision was the Sergeant's. (*Doc. No. 22, Ex. C at 13.*) On December 20, 2007, Sgt. Corrado issued a memo to Plaintiff, finding that he had violated: (1) SEPTA Directive 7 – conduct

7

unbecoming of an officer; and (2) SEPTA Directive 66 – failing to notify a supervisor of contact with law enforcement. (*Doc. No. 25, Ex. 25*.) The Sergeant noted that Plaintiff had thus committed a "Dischargeable Offense." After summarizing the results of the IA investigation, Sgt. Corrado reported that during the pre-disciplinary interview, Plaintiff did not deny IA's findings. (Id.) The Sergeant also noted Plaintiff's prior discharge had been reduced to a Final Warning that had not yet expired. Sgt. Corrado concluded the memo as follows: "You are hereby discharged from the SEPTA Transit Police Department." (Id.)

### C. Nonexistent Factual Disputes

In response to SEPTA's Summary Judgment Motion, Plaintiff alleges that he was never paid: 1) any wages for work he performed between March 29, 2006 and April 19, 2006; or 2) the $1,000 bonus provided to patrol officers in March 2006. (*Doc. No. 22, at 4*.) In their reply papers, however, Defendants provide Plaintiff's payroll records to establish that SEPTA paid him the wages and the bonus. (*Doc. No. 20, Ex. 9; Doc. No. 26, Ex. 34,* 35.) Because Plaintiff has presented no evidence to support his contrary allegations, I will treat Defendants' version of these events as undisputed. See Celotex, 477 U.S. at 322-23; See Blaylock, 504 F.3d at 413.

In addition, Plaintiff contends that under SEPTA Directives, his March 2006 arbitrator-imposed Final Warning had expired by December 2007. This legal contention – whose merits I do not address – is irrelevant for present purposes. Plaintiff does not dispute that Captain Rowell and Mr. Horbury believed that Plaintiff was still under a Final Warning and so informed Sgt. Corrado. Nor does Plaintiff dispute that when he fired Plaintiff, Sgt. Corrado believed Plaintiff was still under the March 2006 Final Warning. Accordingly, I will treat as undisputed Defendants' representation that the Final Warning was one of the reasons Sgt. Corrado fired Plaintiff.

**D. Procedural History**

On May 8, 2008, Plaintiff filed an EEOC complaint, alleging that SEPTA discriminated against him because of his race and discharged him in December 2007 to retaliate against him for filing an EEOC complaint in February 2005. (*Def's Trial Exhibits, Ex. 34.*) On February 23, 2009, Plaintiff received a right to sue letter. (*Doc. No. 1.*) On April 15, 2009, Plaintiff filed the instant Complaint, alleging race discrimination and retaliation. 42 U.S.C. §§ 2000(e) *et seq*, 1981, 1983; 42 Pa. Stat. §§ 951-963. On October 13, 2009, Plaintiff voluntarily dismissed his race discrimination claims and chose to pursue only his retaliation claims under Title VII (Count II), the PHRA (Count IV) and the Civil Rights Act (Count V).

**IV.    DISCUSSION**

The gravamen of Plaintiff's Complaint is that SEPTA retaliated against him by terminating his employment in December 2007 because he filed an EEOC race discrimination charge against SEPTA in February 2005 – a charge he never pursued. (*Doc. No. 1*.)

To make out a prima facie case of retaliation, a plaintiff must provide evidence that: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him after or contemporaneous with the protected activity; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 340-341 (3d Cir. 2006); Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001).

Once an employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate some permissible reason for the action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). The employer's burden at this stage is

> relatively light: it is satisfied if the [employer] articulates any legitimate reason for the [adverse employment action]; the [employer] need not prove that the articulated reason actually motivated the [action].

Id. (quoting Woodson v. Scott Paper, 109 F.3d 913, 920 n.2 (3d Cir. 1997)). If the employer satisfies this burden, the employee must establish by a preponderance of the evidence that the employer's purportedly legitimate reason was a pretext. Id.

In seeking summary judgment, SEPTA concedes that Plaintiff engaged in protected activity, but vigorously denies that his 2007 termination was retaliatory. In response to Defendants' Motion, Plaintiff raises additional allegations of retaliation that appear nowhere in his May 2008 EEOC charge or the instant Complaint. For the first time, Plaintiff alleges that Defendants took the following retaliatory actions: (1) enforced SEPTA's Disciplinary Code against him in a "retaliatory" manner and subjected him to "retaliatory" disciplinary proceedings in December 2007 while he was on leave; (2) subjected him to a "retaliatory" Internal Affairs investigation in October and November of 2007; (3) denied him wages from March 9, 2006 to April 19, 2006; (4) denied him the $1,000 bonus; and (5) denied him the opportunity to earn overtime income on January 4, 2007. *(Doc. No. 22., at 15.)*

### A. Allegations of Retaliation Relating to Plaintiff's December 2007 Firing

Plaintiff's arguments are often confusing. He now apparently alleges that each action Defendants undertook in response to Ms. Price's IA complaint – leading up to Plaintiff's

10

discharge – constitutes a separate act of retaliation. Because these new allegations are directly related to Plaintiff's discharge, I will treat them as part of his claim of retaliatory firing.

### 1. Plaintiff's Termination

Plaintiff has not made out a *prima facie* case of retaliation regarding his December 2007 firing because he cannot establish "a causal connection between his participation in the protected activity and the adverse employment action." See Moore, 461 F.3d at 340-341. That Plaintiff's discharge occurred thirty-five months after Plaintiff filed his February 2005 EEOC complaint is not "'unusually suggestive' of retaliatory motive." Krouse, 126 F.3d at 503; Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (five month gap without any other evidence of retaliatory animus insufficient to establish a causal connection).

Although Plaintiff may establish causation with evidence of a pattern of animus that narrows the thirty-five month gap, he has not done so here. See McLaughlin v. Fisher, 277 Fed. Appx. 207, 218 (3d Cir. 2008) ("Where the temporal proximity is not so close as to be unusually suggestive, courts may look to other types of circumstantial evidence that give rise to an inference of causation.") Plaintiff's belated allegations of retaliatory conduct in March 2006 (twenty months before Plaintiff's discharge) and January 2007 (eleven months before Plaintiff's discharge) remain too remote. See Atkinson v. Lafayette College, 653 F. Supp. 2d 581, 606 (E.D. Pa. 2009) ("*post hoc* efforts to piece together certain events to create a [pattern of] Title IX retaliation . . . fail[ed] to withstand summary judgment scrutiny" when one year gap between previous retaliatory act and termination.) Moreover, as I have discussed (and explain further below), the undisputed evidence shows that Plaintiff's allegations respecting the denial of wages and a bonus in March - April 2006 and overtime in January 2007 are either without evidentiary support or otherwise baseless. Plaintiff has thus failed to show a pattern of retaliation.

11

Moreover, essential to establishing a causal link is evidence that the personnel who subjected Plaintiff to the adverse actions were aware of Plaintiff's protected activity. See McCloud v. UPS, 328 Fed. Appx. 777, 781 (3d Cir. 2009) (causation not shown where the plaintiff presented no evidence that the personnel imposing discipline knew of protected activity). Plaintiff has provided no evidence that Sgt. Corrado – who made the decision to discharge Plaintiff – was aware that Plaintiff had engaged in any protected activity. Plaintiff argues that I must infer that Corrado was aware of Plaintiff's 2005 EEOC complaint because before he fired Plaintiff, the Sergeant communicated with Defendants Rowell and Evans – who knew of Plaintiff's EEOC complaint. (*Pl.'s Statement of Facts, at 20.*) This is simply surmise. Chief Evans did not address the issue in his deposition. Although Plaintiff named Captain Rowell as a Defendant, he did not take the Captain's deposition. Sgt. Corrado testified during his deposition that he did not know of the 2005 EEOC Complaint and had not seen Plaintiff's SEPTA personnel file. (*Doc. No. 22, Ex. C at 13.*) Plaintiff thus offers only speculation – refuted by uncontradicted evidence – that the Sergeant knew of the 2005 EEOC filing. Plainly, Plaintiff has not shown a causal nexus.

Even if Plaintiff could establish a *prima facie* case, Defendants have provided legitimate, non-discriminatory reasons for the 2007 termination: 1) Plaintiff's violation of Directive 7 (the lengthy series of vile and threatening messages he had left for Ms. Price and her mother); 2) Plaintiff's violation of Directive 66 (his failure to inform SEPTA of his contact with Philadelphia Police; and 3) Plaintiff's violation of these Directives while he was under a Final Warning.

To defeat summary judgment, Plaintiff must show by a preponderance of the evidence that these reasons are pretextual. See Moore, 461 F.3d at 340-342. Plaintiff offers evidence that

12

five other SEPTA transit officers – or "comparators" – who committed Directive violations purportedly similar to Plaintiff's but were not fired. See Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 323 (3d Cir. 2000) ("A violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated also violated the policy with no adverse consequence.").

Before I may compare any member of this group to Plaintiff, however, I must be convinced that "all relevant aspects of employment [are] nearly identical." Neely v. United States Postal Serv., 307 Fed. Appx. 681, 684 (3d Cir. Pa. 2009) (citing Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). As the Third Circuit has explained:

> Which factors are relevant [in determining whether an individual is similarly situated] is determined by the context of each case, but often includes a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

Opsatnik v. Norfolk Southern Corp., 335 Fed. Appx. 220, 223 (3d Cir. 2009).

Although Plaintiff and the "comparators" were all SEPTA transit officers, they are not similarly situated. First, Plaintiff has not established that any of these individuals had previously received a "Final Warning," or were investigated or disciplined by the same SEPTA personnel who investigated and discharged Plaintiff. Moreover, the alleged conduct of four of the comparators was not similar to Plaintiff's admitted transgressions. Officer John Melone made false statements to supervisors and falsified records respecting a car accident in which he was involved. Officer Darryl Simmons shot and killed a civilian while off duty and is currently on administrative leave pending his criminal investigation. (*Doc. No. 22, Ex. A.*) Although Officer Walter Moore was accused of domestic violence, SEPTA determined the allegations were not credible. Similarly, although Officer Steven Rocher was arrested for domestic violence, the

13

charges against him were dismissed. Only Officer Jason Osner's conduct was at all similar to Plaintiff's. After Osner was accused of stealing from a convenience store, he took the opportunity SEPTA gave him to resign rather than be terminated – the same opportunity Plaintiff refused after it was offered by Sgt. Corrado.

In these circumstances, Plaintiff has not made out a *prima facie* case of retaliation, nor has he shown pretext.

### 2. Plaintiff's Other Allegations Related to His 2007 Discharge

Because Plaintiff's other allegations related to his December 2007 termination are simply a restatement that the firing itself was retaliatory, they fail for the same reasons. Plaintiff cannot establish a *prima facie* case that SEPTA retaliated against him by subjecting him to: disciplinary proceedings when he was out on leave, "retaliatory enforcement" of SEPTA's Disciplinary Code, or a "retaliatory" Internal Affairs investigation. Moreover, as I have described, Plaintiff has not shown that Defendants' reasons for investigating and disciplining Plaintiff are pretextual.

### B.     Plaintiff's Other Belated Claims Are Procedurally Defective

Plaintiff's remaining retaliation claims – wage, bonus, and overtime denials that occurred in March/April 2006 and January 2007 – are unrelated to any allegation in Plaintiff's Complaint. Defendants have thus not been given the opportunity properly to defend against these new claims. Accordingly, the claims are not properly before the Court. See Aldinger v. Spectrum Control, Inc., 207 F. Appx. 177, 180-81 (3d Cir. 2006) (district court properly refused to consider a claim raised by the plaintiff in response to the defendant's motion for summary judgment); Ladd v. Boeing Co., 2008 U.S. Dist. LEXIS 9724 (E.D. Pa. Feb. 8, 2008) (court will not consider new allegations regarding retaliation that were not included in complaint).

Moreover, to the degree that Plaintiff seeks to include these new claims of retaliation in his Title VII and PHRA charges, they would likely fail for want of administrative exhaustion. See Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 112 (3d Cir. 2008) ("Although failure to exhaust administrative remedies is generally an affirmative defense to be pleaded by the defendant, we have recognized that a district court has the inherent power to dismiss *sua sponte* . . . [claims] which facially violate[] a bar to suit."); see also Garland v. US Airways Inc, 270 Fed. Appx. 99, 103 (3d Cir. 2008); Burgh v. Borough Counsel of Montrose, 251 F.3d 465, 471 (3d Cir. 2001).

It would also appear that Plaintiff's new claims – which are based on actions SEPTA took in 2006 and 2007 – are time-barred. See 42 U.S.C. § 2000e-5(e); West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995) (an EEOC charge must be filed within 300 days of the date of the allegedly wrongful act); 43 Pa. Cons. Stat. Ann. §§ 959(a)-(h), 962 (2006) (PHRA requires plaintiffs to file administrative complaints with 180 days of the alleged act of discrimination); Spindler v. SEPTA, 47 Fed. Appx. 92, 95 (3d Cir. 2002) (section 1983 claims are subject to Pennsylvania's two-year statute of limitations for personal injury claims); White v. Sch. Dist., 2008 U.S. Dist. LEXIS 47726, 18-19 (E.D. Pa. June 19, 2008) (same).

### C. Plaintiff's Belated Retaliation Claims Fail on the Merits

Were I to consider the merits of Plaintiff's allegations regarding denial of wages, a bonus, and overtime, Defendants would remain entitled to summary judgment.

#### 1. Denial of Bonus and Overtime

As I have discussed, the undisputed evidence shows that Plaintiff filed successful internal SEPTA grievances concerning the denial of the bonus in March 2006 and the denial of overtime in January 2007. Accordingly, Plaintiff cannot make out a *prima facie* case of retaliation

15

because he has failed to demonstrate that he suffered any "adverse action." See Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (an adverse action under Title VII is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment"). Moreover, Plaintiff has not demonstrated that the SEPTA personnel who purportedly refused the bonus and failed to inform him of the overtime opportunity even knew of Plaintiff's protected activity. See McCloud, 328 Fed. Appx. at 781; Zechman v. Christiana Care Health Systems, 2007 WL 1891123, at *6 (D. Del. June 26, 2007) ("the plaintiff must present evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action. Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.") (quoting Ferguson v. E.I. DuPont de Nemours & Co., 560 F. Supp. 1172, 1200 (D. Del. 1983))

### 2. Belated Denial of Wages Claim

As I have also discussed, the undisputed evidence shows that Plaintiff was paid by SEPTA following his reinstatement on March 29, 2006. Accordingly, I will limit Plaintiff's wage denial claim to the period following the arbitrator's March 9th award and Plaintiff's official reinstatement on March 29th. Plaintiff alleges that Defendants retaliated against him after the arbitrator's reinstatement award by not immediately placing him on SEPTA's active payroll. Plaintiff contends that the temporal proximity between protected activity and this adverse action is sufficient to demonstrate a causal link, and thus a *prima facie* case of retaliation. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. Pa. 2007) ("In certain narrow circumstances, an unusually suggestive proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection.").

Although Plaintiff raises for the first time protected activities that took place in 2003 (complaints Plaintiff made to his supervisors respecting a hostile work environment) and 2004 (Plaintiff's workers' compensation claim), the protected activity closest in time– his filing of the EEOC charge in February 2005 – occurred thirteen months before the March 2006 wage denial. This lack of temporal proximity belies Plaintiff's suggestion that he has made out a *prima facie* case of retaliation. See Brennan v. Norton, 350 F.3d 399, 420 (3d Cir. 2003) (nine month gap is too great to establish temporal proximity). In addition, Plaintiff has not shown that the SEPTA employees responsible for his March 29th reinstatement knew about his protected activities. See McCloud, 328 Fed. Appx. at 781 (no causal nexus shown where plaintiff presented no evidence that the personnel imposing discipline knew of protected activity).

In any event, Defendants have provided legitimate, non-discriminatory reasons for the twenty day period between the arbitration award and Plaintiff's restoration to the active payroll: (1) the time necessary for Plaintiff to obtain the medical clearance required before he could return as a patrol officer; and (2) the "natural period of time it took for SEPTA's Labor Relations Department to implement the [March 9, 2006] arbitration decision." (*Doc. No. 19; Doc No. 20, Ex. 8.*)

Once again, Plaintiff must show by a preponderance of the evidence that these explanations are pretextual. See Moore, 461 F.3d at 340-342. Plaintiff presents no evidence that upon learning of the March 9th award, he asked SEPTA to act more quickly in reinstating him. He never filed a grievance for the twenty days he was not paid. Plaintiff argues only that SEPTA could have reinstated him earlier into a temporary position, and that the twenty days it took to place Plaintiff on the active payroll was unreasonable. (*Doc. No. 22, at 20-21.*) The only supporting evidence Plaintiff offers is the affidavit of FOTP President Neal, who states that

17

SEPTA was required to reinstate Plaintiff to its payroll immediately, and opines that Plaintiff's reinstatement should have occurred sooner. Mr. Neal does not, however, deny that medical clearance was required, nor does he suggest that twenty days was an unreasonable period in which to schedule and conduct the necessary medical exam. In these circumstances, Plaintiff has once again failed to make out pretext. See Jones v. School Dist., 198 F.3d 403 (3d Cir. Pa. 1999) ("The plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . [r]ather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.") (citing Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997)).

## V. CONCLUSION

Plaintiff has either failed to make out a *prima facie* case of retaliation, failed to show pretext, or both. Accordingly, Plaintiff has presented no retaliation claim that can survive summary judgment. On the contrary, the undisputed facts show that SEPTA terminated Plaintiff in December 2007 because of his appalling conduct. Accordingly, I will grant Defendants' Motion for Summary Judgment.

An appropriate Order follows.

BY THE COURT.

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.